# In The United States Court of Federal Claims

No. 13-194C

(Filed Under Seal: September 3, 2014)

Reissued: September 16, 2014[1]

---

| | | |
|---|---|---|
| COMPLIANCE SOLUTIONS OCCUPATIONAL TRAINERS, INC. | * | |
| Plaintiff, | * | Contract; Motion to dismiss under RCFC 12(b)(1) and 12(b)(6); Unsigned contract; Cooperative agreement; Detrimental reliance. |
| v. | * | |
| THE UNITED STATES, | * | |
| Defendant. | * | |

---

**OPINION**

---

*Theodore P. Watson*, Watson & Associates, Denver, CO, for plaintiffs.

*Robert C. Bigler*, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Stuart F. Delery*, for defendant.

**ALLEGRA, Judge:**

In this contract case, plaintiff seeks $365,984.09 for an online training course developed for the Occupational Safety and Safety Administration (OSHA). It alleges, *inter alia*, that OSHA breached a cooperative agreement when it failed to reimburse plaintiff for costs it incurred in preparing the training materials. Defendant has moved to dismiss plaintiff's complaint under RCFC 12(b)(1) for lack of jurisdiction, and under RCFC 12(b)(6) for failure to state a claim. For the reasons that follow, the court hereby **GRANTS** defendant's motion.

## I. Background

A brief recitation of the facts provides necessary context.[2]

---

[1] An unredacted version of this opinion was issued under seal on September 3, 2014. The parties were given an opportunity to propose redactions, but no such proposals were made. Nevertheless, the court has incorporated some minor changes into this opinion.

On March 29, 2011, OSHA issued a "Notice of Competition and Request for Applications" (RFA) for interested organizations to submit applications to apply for authorization to deliver online training courses.  *See* 76 Fed. Reg. 17,451 (Mar. 29, 2011); *see also 360Training.com, Inc. v. United States*, 106 Fed. Cl. 177, 182 (2012).[3]  The online training courses are designed to give workers an overview of the OSHA system, worker's rights, and other basic safety and hazard information.  The RFA stated that "[t]o provide an orderly process for evaluating the comparative strengths of entities that wish to be authorized online trainers, OSHA has decided to invite proposals."  The RFA further stated that "[a]lthough this competitive process is in some ways similar to that used in procurement, no products or services are sought for OSHA's use; the present Federal Register notice is not a contract or procurement action."  76 Fed. Reg. 17,451, 17,452.  The RFA further explained that "OSHA will enter into 5-year, nonfinancial cooperative agreements with successful applicants," adding that "[t]hese cooperative agreements will not constitute a grant or financial assistance instrument, and OSHA will provide no compensation to authorized trainers."  *Id.*  Rather, the primary benefit received by third-party vendors, under the anticipated arrangement, was the authorization to charge fees to students who would enroll in the online courses.

On January 10, 2012, OSHA sent a letter to Compliance Solutions "[c]ongratulat[ing]" them "on being selected as an authorized online training provider for [OSHA] Outreach Training Program courses . . . based on [your] capacity to provide quality interactive online training, ability to conduct online OSHA Outreach Training Program courses for workers, and compliance with the program requirements."  The letter added that "[OSHA] look[s] forward to the success of your training course" and informed plaintiff that it "[would] be receiving information regarding the implementation process in the near future."  In a letter dated March 19, 2012, James Barnes, OSHA's Director of the Office of Training and Educational Programs, notified plaintiff that the agency had "completed its initial review" of the training program.  The letter enumerated specific areas requiring revision, as well as other areas for consideration.  The letter stated that "[a] complete review of content for accuracy and compliance with OSHA standards will be conducted after the full program has been submitted to OSHA for final approval."  The letter, nevertheless, advised plaintiff to "[p]lease proceed with development of your entire 10-Hour Construction program in a manner consistent with the [initial] review comments."

On March 22, 2012, Mr. Barnes forwarded plaintiff a cooperative agreement for review and signature.  The cover letter enclosing the cooperative agreement asked plaintiff to "[p]lease

---

[2]  These facts are primarily drawn from plaintiff's complaint (and the exhibits attached thereby), and, for the purpose of this motion, are assumed to be correct.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589 (2007).

[3]  The Notice was issued pursuant to 29 U.S.C. § 670(c), which states, *inter alia*, under the heading "Authority of Secretary of Labor to establish and supervise education and training programs and consult and advise interested parties" that "[t]he Secretary, in consultation with the Secretary of Health and Human Services, shall (1) provide for the establishment and supervision of programs for the education and training of employers and employees in the recognition, avoidance, and prevention of unsafe or unhealthful working conditions in employments covered by this chapter . . . ."

review the agreement, have each of the three copies signed by the appropriate official, and return them . . . ." Mr. Barnes further advised plaintiff that "OSHA will sign the copies and return one fully executed agreement to you for your files." The cooperative agreement included signature blocks for both parties, with the signature block for OSHA indicating that the contract would be signed by Kimberly Locey, the Director of Administrative Programs. The unsigned cooperative agreement stated that "OSHA provides no funding to the online training provider for the conduct of OSHA Outreach Training Program online classes or any other purpose under this agreement." The agreement further stated that:

> Nothing in this agreement is intended to diminish or otherwise affect the authority of the Department of Labor to implement its respective statutory functions, nor is it intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any other person. This agreement is effective upon signature by both parties.

On March 26, 2012, plaintiff executed the cooperative agreement and returned the copies to OSHA. It is unclear when OSHA received the partially signed copies. It is clear, however, that Ms. Locey never signed the agreement; nor did anyone else execute the agreement on behalf of OSHA.

On March 27, 2012, one of the unsuccessful offerors, 360Training.com, filed a post-award bid protest with this court based on its exclusion from award. In March 30, 2012, the court granted the protestor's motion for preliminary injunction, but refused to preclude defendant from allowing awardees of the cooperative agreements (including plaintiff) to proceed. On July 13, 2012, this court held that OSHA had improperly adopted an evaluation process that differed from the process disclosed in the RFA and had improperly disqualified 360Training.com based on undisclosed eligibility requirements. *360Training.com, Inc. v. United States*, 106 Fed. Cl. 177 (2012). The court stayed the entry of judgment and the entry of a permanent injunction, until further order. On July 26, 2012, OSHA notified plaintiff that the selection of online training providers had been cancelled. The notice stated that OSHA had "determined that the agency must cancel the March 29, 2011, *Federal Register* Notice soliciting applications for 'Online OSHA Outreach Training Programs.' As a result, the selections of online authorized Outreach Training Program providers which were announced in an OSHA Trade News Release on January 12, 2012 are also cancelled."

On November 1, 2012, Compliance Solutions submitted a certified claim to OSHA under the Contract Disputes Act (CDA), 41 U.S.C. § 7104(b)(1) (formerly § 609(a)(1)). OSHA did not respond to the claim. On March 15, 2013, plaintiff filed its complaint in this court. In that complaint, plaintiff sought a declaration, under the Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1491(b)(1), and under the CDA, requiring OSHA to reimburse plaintiff $365,984.09 for costs associated with the alleged performance of the contract in question. While the complaint listed categories of expenses and lost revenue, it did not reveal when the expenses in question were incurred.[4]

---

[4] According to the complaint, "within the months of performance preparation," plaintiff incurred $189,299.88 in expenses, including costs associated with "IT Expense" ($77,055.00)

On June 13, 2013, defendant filed its motion to dismiss, which was fully briefed. On March 14, 2014, the court heard argument on the motion.[5]

## II. DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) [6] (citations omitted); *see also Twombly*, 550 U.S. at 554-55. In particular, the plaintiff must establish that the court has subject-matter jurisdiction over its claims. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

To survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the complaint must have sufficient "facial plausibility" to "allow [] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Klamath Tribe Claims Comm. v. United States*, 97 Fed. Cl. 203, 208 (2011), *aff'd*, 2013 WL 4494383 (Fed. Cir. Aug. 23, 2013). The plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570; *see also Dobyns v. United States,* 91 Fed. Cl. 412, 422-28 (2010) (examining this pleading standard). Nevertheless, the Federal Circuit has reiterated that "[i]n ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009); *see also Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 3468 (2010); *Petro–Hunt, LLC v. United States*, 90 Fed. Cl. 51, 68 (2009).

---

and voice verification software development ($60,901.75), as well as $176,684.21 in payroll costs. The complaint indicates that the payroll expenses were for the period from January 20, 2012, through August 3, 2012.

[5] Defendant's motion includes a declaration from Mr. Barnes. As the court will not rely upon this declaration, the court will exclude it under RCFC 56(d). The court, however, will consider the copy of the agreement, as that agreement is referenced in the complaint and may properly be considered in the context of a Rule 12 motion without converting the motion to one for summary judgment under RCFC 56(d). *See Petro-Hunt, LLC v. United States*, 90 Fed. Cl. 51, 71 n.23 (2009).

[6] For purposes of this opinion, the court will refer to the United States Court of Appeals for the Federal Circuit as the "Federal Circuit." The court notes that some recent Federal Circuit opinions have taken to refer to this court as the "Claims Court." *See, however,* the Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 902(a)(1), 106 Stat. 4506, 4516 (enacted on October 29, 1992) (renaming this court as the "United States Court of Federal Claims"); *see also Williams v. Sec'y of the Navy*, 787 F.2d 552, 557 n.6 (Fed. Cir. 1986) (noting that references to courts abolished by Congress can "indicate confusion").

The initial issue in this case is whether a valid and binding contract was ever formed. To establish the existence of a contract with the United States, Compliance Solutions must demonstrate "a mutual intent to contract including an offer, an acceptance, and consideration," as well as a showing that "the Government representative . . . had actual authority to bind the United States." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997); *see also Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 1177 (1999); *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990), *cert. denied*, 501 U.S. 1230 (1991). The requirements are the same for express and implied contracts. *Trauma Serv. Grp.*, 104 F.3d at 1325; *Seven Resorts, Inc. v. United States*, 112 Fed. Cl. 745, 779 (2013). Plaintiff, however, has not shown that there was a mutual intent to contract for one simple reason: no authorized official of the United States ever signed the cooperative agreement. On March 22, 2012, OSHA, through Mr. Barnes, sent an unsigned cooperative agreement to plaintiff. That agreement, however, specifically provides that "[t]his agreement is effective upon signature by both parties." On March 26, 2012, plaintiff executed the agreement, returned it to defendant, and proceeded with development of its program. But, defendant never signed the agreement.

Plaintiff argues that its correspondence with OSHA about the development of its programs constituted an acceptance of defendant's offer. It cites the January 10, 2012, letter from OSHA "congratulat[ing]" it "on being selected as an authorized online training provider." Plaintiff further points to correspondence during March 2012 between Mr. Barnes and plaintiff, concerning necessary revisions to plaintiff's programs. It views that correspondence as confirming the existence of a contract. Plaintiff finally argues that its expenditure of funds to develop the program and to respond to OSHA's suggestions is relevant to the question whether a binding agreement exists. But, for the reasons that follow, these arguments are not well-taken.

When the parties contemplate being bound only by a written agreement, the court will not infer a contract without such an agreement. *See Peninsula Grp. Capital Corp. v. United States*, 93 Fed. Cl. 720, 732 (2010); *Pac. Gas & Elec. Co. v. United States*, 3 Cl. Ct. 329, 339 (1983) ("[I]in negotiations where the parties contemplate that their contractual relationship would arise by means of a written agreement, no contract can be implied."); *see also Gillioz v. United States*, 102 Ct. Cl. 454, 466-67 (1944). In this case, a clause in the cooperative agreement plainly stated that the agreement would be effective only upon signature of both the parties ("[t]his agreement is effective upon signature by both parties"). Defendant did not sign the agreement. In a circumstance such as this, the Restatement (Second) of Contracts holds –

> [a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.

Restatement (Second) of Contracts § 26; *see also id*. at cmt. a; 1 Corbin on Contracts § 2.2 (Joseph M. Perillo, rev. ed. 2003). Plaintiff chose to proceed with development of its program even though it was aware that defendant had not signed the contract. It cannot complain now that its failure to demand the execution of the agreement, nonetheless, gave rise to a contract.

*See Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed. Cir. 2001), *cert. denied*, 538 U.S. 1052 (2003); *Gingerich v. United States*, 77 Fed. Cl. 231, 242 (2007).[7]

To be sure, certain cooperative agreements may give rise to contracts over which this court may have jurisdiction. *See, e.g.*, *Spectrum Sciences v. United States*, 84 Fed. Cl. 716, 722-23 (2008); *PDR, Inc. v. United States*, 78 Fed. Cl. 201, 204-05 (2007). But, the agreement in question, even if signed, did not. This is because the cooperative agreement itself plainly states that it is not an agreement that creates any binding rights or obligations:

> Nothing in this agreement is . . . intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any other person.

*Cf. Spectrum Sciences*, 84 Fed. Cl. at 722-26. In addition, the cooperative agreement also provides that "OSHA provides no funding to the online training provider for the conduct of OSHA Outreach Training Program online classes or any other purpose under this agreement." Therefore, even if the cooperative agreement had been properly executed, money damages are unavailable, as the contract "expressly disavow[s] money damages." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011); *see also Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008); *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990).

While the contract itself is plainly not a source of money damages, plaintiff in its complaint and in the argument held on defendant's motion invoked the Federal Grant and Cooperative Agreement Act of 1977, 31 U.S.C. § 6303, *inter alia*, as a potential source of jurisdiction. Essentially, plaintiff argues that the cooperative agreement is a "procurement" as defined in 31 U.S.C. § 6303; that OSHA, in soliciting applications for online training providers, has engaged in a procurement, and therefore that this court has jurisdiction under 28 U.S.C. § 1491(b)(1). Plaintiff supports its argument by pointing to the court's decision in *360Training.com*, 106 Fed. Cl. 177, asserting that the fact that "jurisdiction was proper under this specific and exact set of facts . . . in *360Training.com*" somehow confers jurisdiction over this matter. But, *360Training.com* was a bid protest matter, brought pursuant to 28 U.S.C. 1491(b), in which the court held that the Notice was issued in connection with the acquisition of property, making bid protest jurisdiction proper. *See 360Training.com*, 106 Fed. Cl. at 180; *see also* 28 U.S.C. § 1491(b)(1). Plaintiff's complaint does not assert such a claim here. Nor does it appear that jurisdiction should otherwise obtain here.[8]

---

[7] Plaintiff additionally alleged that defendant breached the duty of good faith and fair dealing by failing to act in good faith or cooperate with plaintiff's attempts to recover costs it allegedly incurred in preparing to perform. Plaintiff's attempt to rely on the covenant is misplaced. For the covenant of good faith and fair dealing to apply, there must be an underlying contract. *See Peninsula Grp. Capital Corp. v. United States*, 93 Fed. Cl. 720, 732 (2010) ("Since this Court finds that no contract arose between the parties, no such duty [of good faith and fair dealing] is implied between them."); *Night Vision Corp. v. United States*, 68 Fed. Cl. 368, 390 (2005). And here there is not.

[8] To be sure, in issuing a preliminary injunction in *360Training.com, Inc. v. United States*, 104 Fed. Cl. 575 (2012), this court held that the RFA was "in connection with" the

Finally, plaintiff asserts that it relied, to its detriment, upon the benefits proposed by OSHA, including (i) a non-financial cooperative agreement with OSHA; (ii) a listing on OSHA's website; (iii) the significant growth in online training and web-based distance learning; and (iv) indirect funding as an awardee authorized to charge fees. In addition, plaintiff contends that based upon its reliance upon the award letter, it incurred in excess of $360,000 in order to prepare for the performance of the anticipated work. The decisional law, however, makes clear that a claim based upon detrimental reliance is one based upon promissory estoppel. *Copar Pumice Co., Inc. v. United States*, 112 Fed. Cl. 515, 538 (2013); *Corrales v. United States*, 56 Fed. Cl. 283, 285 (2003). And the same law makes clear that this court lacks jurisdiction over such a claim. *Hercules, Inc. v. United States*, 516 U.S. 417, 423-24 (1995); *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed Cir. 2007); *Sinclair v. United States*, 56 Fed. Cl. 270, 281 (2003).

## III. CONCLUSION

The court will not gild the lily. For the reasons discussed above, the court hereby **GRANTS** defendant's motion to dismiss under RCFC 12(b)(1) and RCFC 12(b)(6), and orders the Clerk to dismiss the complaint for lack of jurisdiction.[9]

**IT IS SO ORDERED**.

s/Francis M. Allegra
Francis M. Allegra
Judge

---

"process of acquiring property or services" for OSHA and, therefore, bid protest jurisdiction was proper. *Id.* at 586-88. However, in *CMS Contract Mgmt. Serv. v. Mass. Housing Finance Agency*, 745 F.3d 1379, 1385 (Fed. Cir. 2014), the Federal Circuit held that "[w]hether a contract is a procurement contract or a cooperative agreement is a question of law." In that case, the Federal Circuit noted that the primary purpose of the Performance-Based Annual Contribution Contracts were "to procure the services of contract administrators" to assist the staff of the Department of Housing and Urban Development in managing its portfolio of housing contracts. *Id.* at 1385. As a matter of law, there is no evidence that the RFA here was in connection with the process of acquiring property or services – indeed, the language found in the RFA and the cooperative agreement itself is quite to the contrary (*e.g.*, "[a]lthough this competitive process is in some ways similar to that used in procurement, no products or services are sought for OSHA's use"). *Cf. Hymas v. United States*, 2014 WL 3704598, at *17 (Fed. Cl. July 25, 2014).

[9] This opinion shall be published, as issued, after September 15, 2014, unless the parties identify protected and/or privileged materials subject to redaction prior to that date. Any such materials shall be identified with specificity, both in terms of the language to be redacted and the reasons for each redaction (including appropriate citations to authority).